Marwan Ahmed HARARA, Plaintiff,

v.

CONOCOPHILLIPS COMPANY, et al., Defendants.

ConocoPhillips Company, Counterclaimaint,

v.

Marwan Ahmed Harara. Counterdefendant.

No. C04–0515 BZ.

United States District Court, N.D. California.

April 29, 2005.

Marwan Ahmed Harara, Plaintiff pro se.

Adam Friedenberg, Glynn & Finley, LLP, for defendant ConocoPhillips Company.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ON COUNTERCLAIMS

ZIMMERMAN, United States Magistrate Judge.

Now before me are the parties cross-motions for summary judgment on the counterclaims of defendant and counter-claimant ConocoPhillips Company ("Conoco") against plaintiff and counterdefendant Marwan Ahmed Harara.[1]

■ Conoco's first counterclaim seeks relief for breach of contract for Harara's failure to pay in full for a January 6, 2004 delivery of gasoline and for defaulting on his January and February 2004 rent. To prevail on a claim for breach of contract, Conoco must establish (1) the existence of a valid contract (2) Conoco's performance or excuse for nonperformance, (3) Harara's breach, and (4) resulting damages. *See Reichert v. General Ins. Co.,* 68 Cal.2d 822, 830, 69 Cal.Rptr. 321, 442 P.2d 377 (1968); *Armstrong Petroleum Corp. v. Tri–Valley Oil & Gas Co.,* 116 Cal.App.4th 1375, 1391, 11 Cal.Rptr.3d 412 (2004); 4 Witkin, California Procedure, Pleading § 476 (4th ed.1997); 1 Witkin, Summary of California Law, Contracts § 791 (9th ed.1990). Based on the evidence submitted, Conoco has established that no genuine issue of material fact exists as to whether Harara breached the Franchise Agreement. *See* Fed.R.Civ.P. 56; *Rand v. Rowland,* 154 F.3d 952, 963 (9th Cir.1998).

■ On January 16, 2001, Harara and Tosco Marketing Company, Conoco's predecessor in interest, entered into the Deal-er Station Lease and Motor Fuel Supply Agreement (the "Franchise Agreement") that expired on April 30, 2004. *See* Decl. of Dean Masterton in Supp. of Conoco's Mot. for Summ. J. or, in the Alternative, Summ. Adjudication as to Pl.'s Claims ("Masterton Decl."), Ex. A. Section 16(a) of the Franchise Agreement provides that Harara "shall pay for all motor fuel purchased from [Conoco] according to the terms established from time to time by [Conoco's] Credit Department." *Id.* In approximately June 2002, Conoco placed Harara on "Cash in Advance" status, which required him to prepay for all gasoline deliveries. Decl. of Paul Curtis in Supp. of Conoco's Mot. for Summ. J. or, in the Alternative, Summ. Adjudication as to Pl.'s Claims ("Curtis Decl.") ¶ 6. On January 6, 2004, Conoco delivered a shipment of gasoline to the Station after its Credit Department authorized a one-time gasoline delivery without prepayment.[2] Curtis Decl. ¶ 6. The cost of the shipment totaled $14,310.82. *Id.* Conoco credited Harara with $5,449.59 owed him for recent credit card sales at the Station leaving $8,861,23 due on January 7, 2004. Conoco is still owed that amount. Curtis Decl. ¶ 6. Conoco has established that Harara failed to pay this amount, and Harara has not demonstrated that he paid this amount or that he was not required to do so under the Franchise Agreement. *See id.* I find that based on the evidence submitted, Conoco has established that Harara breached section 16 of the Franchise Agreement by failing to pay in full for the January 6, 2004 gasoline delivery, and Conoco is

---

1. The facts are set forth in my April 29, 2005 Order on Cross Motions for Summary Judgment on Plaintiff's Claims. This order relies on evidence admitted in according with my ruling on defendant's evidentiary objections, which will be issued separately.

2. Harara generally contends that Conoco refused to permit him to place an order for gasoline unless cash payments were sent and verified in advance. *See* Decl. of Marwan Ahmed Harara in Opp. to Conoco's Motion for Summ. J. as to its Counterclaims ("Harara Opp. Decl.") ¶ 11. However, Conoco has demonstrated, and plaintiff does not dispute, that it did not require payment in advance for the January 6, 2004 delivery. *See* Curtis Decl. ¶ 6.

therefore entitled to judgment as a matter of law.

Conoco has also established that no genuine issue of material fact exists as to whether Harara defaulted on his January and February 2004 rent. Section 3 of the Franchise Agreement required Harara to pay monthly rent. *See* Masterton Decl., Ex. A. Conoco has shown that Harara owed $11,606.78 in rent for January and February 2004, and that he failed to pay this amount. *See* Curtis Decl. ¶ 8.

■ Harara does not dispute that he owed Conoco rent for January 2004, but contends that he paid it. Specifically, he argues that Conoco refused to deliver gasoline to the Station until he had fully paid his account balance. Since Conoco delivered a shipment of gasoline to the Station on January 6, 2004, he requests that I infer that his he paid his January 2004 rent. However, according to the terms of the Franchise Agreement, his January 2004 rent was not due until January 31, 2004 well after Conoco made the January 6, 2004 delivery. *See* Masterton Decl., Ex. A, § 3. Conoco's shipment of gasoline on January 6, 2004 occurred well before Harara's rent became due. Harara also relies on a statement in his declaration that "Conoco's credit department forced Harara to pay rent at the beginning of the month and not at its end. Harara paid rent at the beginning of the month using advanced cash funds." *See* Decl. of Marwan A. Harara in Supp. of his Rep. to Conoco's Opp. to his Summ. J. Mot. at 2. Accepting this statement as true, it demonstrates that Harara paid rent at the beginning of the month; it does not establish that Harara paid his January 2004 rent. At the hearing, I asked Harara whether he paid his January 2004 rent. While he claimed that he had paid it, he was unable to provide any evidentiary support other than the above statement in his declaration. *See id.*

■ Harara does not dispute that he failed to pay rent for February 2004. He contends instead that Conoco's Notice of Termination either relieved or suspended his duty to pay rent. Masterton Decl. ¶ 14, Ex. D. Conoco's Notice of Termination provided that the Franchise Agreement "shall terminate at noon on March 1, 2004," and it did not require him to surrender the Station on that date. *See id.* Harara has offered no authority to support his argument that the Franchise Agreement did not require him to pay rent through February 2004. *See id.* Even if I were to accept Harara's argument, he would have still owed rent for the time period preceding February 20, 2004, the date of Conoco's Notice of Termination. *See id.* For the foregoing reasons, Conoco's motion for summary judgment as to its first counterclaim is **GRANTED**, and Harara's motion is **DENIED**.

Based on its first counterclaim, Conoco has established that it is entitled to $16,663.83 in damages.[3] While Harara claims that he paid a $15,000 security deposit to Conoco, Conoco applied $10,000 of the deposit toward Harara's past debts on November 13, 2002. *See* Rep. Decl. of Paul Curtis in Supp. of Conoco's Mot. for Summ. J., or in the Alternative, S. Adjudication as to Pl.'s Claims ("Curtis Rep. Decl.") ¶ 2. On September 9, 2004, Conoco deducted the remaining $5,000 from the amount owed on Harara's account. *Id.* A total of $16,663.83 remains due on Harara's account, which Conoco has demonstrated Harara failed to pay. Curtis Decl. ¶ 8.

As I have granted Conoco summary judgment on its first counterclaim, I need

---

**3.** This amount includes several hundred dollars in miscellaneous charges, such as credit card fees, which plaintiff did not contest. *See* Curtis Decl. ¶ 8.

not decide whether Harara is also liable for the same amount under Conoco's second counterclaim for violating section 2709 of the California Commercial Code.

■ Conoco's third through fifth counterclaims are based on the Settlement Agreement entered into by Conoco, the City of Oakland, and Khalid Usman in July 2004. *See* Decl. of Douglas Bergman in Supp. of Def. and Counterclaimant Conoco's Mot. for Summ. J. or, in the Alternative, Summ. Adjudication as to Pl.'s Claims ("Bergman Decl."), Ex. B. The Settlement Agreement required Conoco to pay the City of Oakland $4,658.98, plus $2,209.75 in attorney's fees, and to establish a $50,000 fund in the name of Khalid Usman to provide financial assistance to implement additional abatement measures, as needed, until the expiration of the settlement agreement in July 2005. *See id.* Conoco argues that it is entitled to the $56,868.73 on three separate basis: express indemnity, equitable indemnity, and negligence.

Based on the evidence presented, I find that issues of material fact remain in dispute with regard to each of these counterclaims. In particular, the parties dispute the events which gave rise to the Settlement Agreement, and whether these events occurred during the term of the Franchise Agreement. They also dispute whether the City of Oakland or the Oakland Police Department required Harara to take specific measures or make structural improvements to the Station to curb the spread of illegal activity; what measures Harara actually took; and whether these measures adequately addressed any problems occurring at the Station. Any unspent remainder of the $50,000 will be returned to Conoco upon expiration of the Settlement Agreement, and Conoco has not established, nor could it explain at the hearing how much of this fund remains. *See* Bergman Decl., Ex. B. In addition to the above issues, the parties dispute a number of other facts that are material to these counterclaims. Accordingly, both parties' motions for summary judgment on Conoco's third through fifth counterclaims are **DENIED**.

For the foregoing reasons, Conoco's motion for summary judgment is **GRANTED** in the amount of $16,663.83. The third through fifth counterclaims will proceed to trial as scheduled.