**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SALVADOR SOLIS,
                    *Plaintiff-Appellant,*

                    v.

COUNTY OF LOS ANGELES; LOS
ANGELES SHERIFF'S DEPARTMENT;
VARGAS, Los Angeles County
Sheriff,

                    *Defendants,*

                    and

MIGUEL BELTRAN, Los Angeles
County Sheriff,
                    *Defendant-Appellee.*

No. 05-56637

D.C. No.
CV-01-06425-RGK

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
June 13, 2007—Pasadena, California

Filed January 29, 2008

Before: Dorothy W. Nelson, Stephen Reinhardt, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Reinhardt

1433

## COUNSEL

Michael H. Dore, Leila C. Orr, and Mark E. Weber, Gibson, Dunn & Crutcher LLP, Los Angeles, California, for the plaintiff-appellant.

Ali Reza Sabouri, Office of the County Counsel, Los Angeles, California, for defendant-appellee Miguel Beltran.

## OPINION

REINHARDT, Circuit Judge:

Plaintiff Salvador Solis ("Solis"), a former inmate at the Los Angeles County jail, brought this pro se[1] civil action alleging constitutional violations stemming from Solis's

---

[1] Pro bono counsel was appointed to represent Solis on appeal.

transfer into the jail's "gang module," where he was attacked and injured by three other inmates. Solis appeals the district court's verdict, following a bench trial, in favor of defendant Miguel Beltran, as well as the district court's grant of summary judgment in favor of the remaining defendants. We reverse the district court's grant of summary judgment on the ground that Solis was not given fair notice of the requirements and consequences of a summary judgment motion, as required by *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). We also reverse the verdict in favor of Beltran because the district court erred in denying Solis a jury trial, and the error was not harmless.

## I.  Background

Solis is an ex-member of a gang known as the Mexican Mafia, or "La Eme." He is currently serving a sentence of life without parole as a result of his conviction of first-degree murder. Following his arrest on that charge, Solis was placed in the Los Angeles County jail.

According to Solis, he informed a female intake official during his processing at the jail that he was an ex-member of the Mexican Mafia and was therefore a "high control risk" in need of special protection. The official told him to notify the deputies at his cell block once he arrived. At that time, Solis was required to fill out a "Segregation Assessment" form so that his housing classification could be determined. He stated on the form that he had been affiliated with gangs and that he had never served as a police informant or witness for the state. In response to the question, "Do you fear for your safety while in this facility?" Solis answered "No." According to Solis, he did fear for his safety but answered "No" because active gang members were present when he was filling out the form, and answering "Yes" would have drawn their attention to him. Solis was placed in Module 4700, which houses "general population" inmates who are not under protective custody and are not segregated from other inmates.

Solis asserts that, shortly after arriving in Module 4700, he spoke informally with Deputy Miguel Beltran ("Beltran"), an officer in the "Operation Safe Jail" ("OSJ") unit, which was responsible for gathering intelligence on gang activity in the jail. Solis claims that he told Beltran he was "in trouble" because he was an ex-gang member who should have been in protective custody, and that he showed Beltran several documents proving that he was a gang dropout. According to Solis, Beltran responded, "We'll interview you." Beltran denies ever having had such a conversation with Solis.

Solis asserts that on July 14, 1999, members of the OSJ unit interviewed him along with several other prisoners from Module 4700. He states that he believes that the primary interviewer was named "Vargas" but that Beltran was present as well. According to Solis, he told his interviewers that he was an ex-member of the Mexican Mafia and showed them the documents confirming his status. He claims that "Vargas" then asked him to be an informant for OSJ. Solis asserts that when he refused and requested placement in protective custody, "Vargas" threatened to put him in the "gang module," a unit that houses active gang members. Solis objected, but was nevertheless transferred to the "gang module" that same day.[2]

Two weeks later, around July 28, 1999, Solis was assaulted by three inmates in the gang module. He asserts that during the beating, one of the assailants mentioned Beltran by name, stating, "Beltran was the one that gave you up, punk." On August 2, as Solis was walking to the shower area, he reported the assault to Deputy John Gutierrez. He explained that this was his first chance to report the beating because it was the first time he had not been in the presence of his assailants since the attack. Gutierrez observed that Solis had

---

[2]That Solis was transferred to the gang module is undisputed. As the district court found, "There is no question that an event occurred, which changed Plaintiff's cell assignment . . . ."

bruises on his torso, forearms, neck, and eye, and escorted him to the clinic for medical attention. That day, Solis was transferred out of the gang module to Module 3700.

On February 11, 2002, Solis filed a pro se complaint in federal court against Beltran, "Vargas," Sheriff Lee Baca, the County of Los Angeles, and the Los Angeles County Sheriff's Department ("Defendants"),[3] alleging violations of his civil rights under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. He argued, *inter alia*, that the Defendants retaliated against him for refusing to "snitch" by placing him in the gang module with knowledge of the attendant dangers, and that such retaliation was a custom or practice of the County.[4] In his complaint he demanded a jury trial, both in the caption and at the end of the pleading.

On September 20, 2004, the district court received the first of Solis's two requests for appointment of counsel. The court rejected the request on the ground that no proof of service was attached to the motion. On November 3, 2004, the court filed an Order for Jury Trial, which set a trial date of April 5, 2005, and contained instructions regarding discovery, pretrial settlement, and the submission of motions, instructions, and exhibits in preparation for trial. At the bottom of the section requiring the submission of jury instructions and special verdict forms, the order stated, "Failure of counsel to strictly follow the provisions of this section . . . SHALL CONSTITUTE A WAIVER OF JURY TRIAL in all civil cases."

---

[3]The complaint also included various John and Jane Does, representing custodial and medical personnel of the Los Angeles County Sheriff's Department. The district court did not mention these parties in any of its rulings.

[4]A municipality may be held liable for the unconstitutional acts of its officials if those acts were done pursuant to a "policy or custom" of the municipality. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

On January 19, 2005, the Defendants filed a motion for summary judgment, to which Solis filed an opposition on February 22. The Defendants then filed objections to Solis's summary judgment opposition, complaining that the opposition was filed nine days late, did not contain a separate statement of undisputed facts, and was supported only by hearsay or documents that had not been properly disclosed. The district court accepted Solis's untimely opposition and granted the Defendants summary judgment as to Solis's *Monell* claim and his § 1986 claim. It also dismissed Solis's claims against Sheriff Baca, noting that Solis had "not shown any evidence that Sheriff Baca should be held individually liable." The court did find, however, that Solis had presented enough evidence to create a genuine issue of material fact with respect to Beltran, and thus denied summary judgment on Solis's §§ 1981, 1983, and 1985 claims against him.

Two weeks later, during a March 21, 2005, pretrial conference at which Solis appeared telephonically, the district court stated that Solis "did not file a jury demand" and had waived jury trial "due to the non-submission of required pretrial documents." Noting that Solis's confinement was a "substantial barrier to his attendance at trial," the district court announced that it would conduct the trial as a "Court Trial by videotape depositions." Solis subsequently filed a second request for appointment of counsel, explaining that his education was limited to an eighth-grade level, that he had no legal education and limited access to legal materials, and that the case involved complex legal issues that required discovery of documents and depositions of a number of witnesses. He also reiterated his demand for a jury trial. The district court denied the request for counsel without explanation.

Having reviewed the videotaped depositions and corresponding transcripts of Solis, Beltran, and Gutierrez, the district court issued its "Statement of Decision" on July 14, 2005. Finding that there was "no question that an event occurred which changed [Solis's] cell assignment and directly

led to [Solis's] injuries," the district court criticized Beltran for being "less than forthcoming with regard to the presentation of evidence" that should have been in his immediate control. The district court also concluded that Solis's "version as to many of the events seems more credible than that of Defendant's witnesses." Nevertheless, the district court ruled in Beltran's favor on the ground that Solis was "unable to provide sufficient evidence to sustain a finding of liability." There was no separate order setting forth the judgment apart from the Statement of Decision. The district court ordered Solis to pay a bill of costs in the amount of $1,115 for trial and deposition fees.

Solis filed a Notice of Appeal on October 18, 2005. He argues that (1) summary judgment was improper; (2) the district court deprived him of his right to a jury by adjudicating his claim against Beltran via a bench trial "by videotape depositions," and that, in any event, the district court's verdict in favor of Beltran was wrong on the merits; and (3) the district court abused its discretion in refusing to appoint Solis counsel. We address each issue in turn.

## II.   Discussion

### A.   Jurisdiction

**[1]** As a preliminary matter, we reject the Defendants' contention that this Court lacks jurisdiction because Solis's notice of appeal was untimely. Notice of appeal must be filed within 30 days "after the judgment . . . is entered," subject to certain exceptions. Fed. R. App. P. 4(a)(1)(A). A judgment is not "entered" for the purposes of Rule 4(a) unless it complies with Rules 58(a) and 79(a) of the Federal Rules of Civil Procedure. Fed. R. App. P. 4(a)(7); *Beaudry Motor Co. v. Abko Props., Inc.*, 780 F.2d 751, 754 (9th Cir. 1986). Rule 58(a)(1) requires that every judgment be set forth on a separate document, with certain exceptions not applicable here. Fed. R. Civ. P. 58(a)(1). Rule 79(a) details the civil docketing procedure

to be followed by the district court clerk when entering the judgment. Fed. R. Civ. P. 79(a). When judgment is not set forth on a separate document as required by Rule 58(a)(1), it is considered "entered" when 150 days have run from notation in the civil docket. Fed. R. App. P. 4(a)(7)(A)(ii).

**[2]** The district court's "Statement of Decision" was issued on July 14, 2005, and entered on the docket, in accordance with Rule 79(a), on July 15, 2005. The district court did not, however, set forth the judgment on a separate document as required by Rule 58(a)(1).[5] Therefore, judgment was not "entered" until December 12, 2005, 150 days after the Statement of Decision was noted in the civil docket. As a result, Solis's October 18, 2005, Notice of Appeal was timely, *see* Fed. R. App. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry."), and we accordingly have jurisdiction to consider Solis's claims on appeal.

## B. Summary Judgment

Solis argues that the district court's grant of summary judgment in favor of the Defendants (excluding Beltran) was inappropriate because he was not given fair notice of the requirements and consequences of a summary judgment motion, as required by *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). We review a district court's grant of

---

[5]Central District of California Local Rule 58-6 states that "[n]otation in the civil docket of entry of a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall not constitute entry of judgment pursuant to F.R. Civ. P. 58 and 79(a) unless specifically ordered by the judge." The district judge in this case did not include any language in the Statement of Decision indicating that he was ordering the notation of the Statement in the civil docket to constitute entry of judgment. *See Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 931-32 (9th Cir. 1999).

summary judgment de novo. *Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1477 (9th Cir. 1986).

**[3]** In *Rand*, we reaffirmed the longstanding principle that a pro se prisoner is entitled to fair notice of the requirements and consequences of the summary judgment rule. *Rand*, 154 F.3d at 959. We further held that either the district court or the summary judgment movant may provide the prisoner with notice,[6] and that "[i]f the movant provides the notice, it must be in a separate form that the plaintiff will recognize as given pursuant to the court's requirement. It may not be provided within the summary judgment motion or in the papers ordinarily filed in support of the motion." *Id.* at 960. Finally, we outlined the contents required for sufficient notice, holding that the notice "must be phrased in ordinary, understandable language" and that it must inform the prisoner both of his "right to file counter-affidavits or other responsive evidentiary materials" and, "most importantly, . . . of the effect of losing on summary judgment." *Id.*

**[4]** Here, neither the district court nor the Defendants provided the notice *Rand* requires. The district court issued instructions regarding preparation for trial in its "Order for Jury Trial." Under the heading "Motions for Summary Judgment or Partial Summary Judgment," the district court stated only that "[m]otions for summary judgment or partial summary judgment shall be filed as soon as practical, however, in no event later than the motion cut-off date." Its order contained no instructions regarding either the requirements of responding to or the consequences of losing on summary judgment. Specifically, the district court's order did not alert Solis "to the fact that the failure to [file responsive evidentiary materials] might result in the entry of summary judgment against" him, *Rand*, 154 F.3d at 960, and it certainly did not

---

[6]In doing so, we explicitly overruled *Arreola v. Mangaong*, 65 F.3d 801, 802 (9th Cir. 1995) (per curiam), which held that the notice must be given by the district court itself.

"inform [Solis] that if the motion for summary judgment is granted, [his] case will be over," *id.*

**[5]** Nor did the Defendants provide, "in a separate form" as required by *Rand*, any notice describing the procedural requirements Solis must meet in countering the summary judgment motion or the consequences of failing to meet those requirements, including the fact that losing on summary judgment would mean the effective termination of his case.[7] *See id.* at 960-61; *see also id.* at 962 (holding that the defendants' two-page notice of rules relating to summary judgment, although it alerted the pro se prisoner of his right to file responsive materials and the consequences of failing to do so, was nevertheless insufficient because it was not phrased in ordinary language and did not inform the plaintiff of the effect of losing on summary judgment).

**[6]** Thus, because Solis was not given fair notice, demanded by *Rand*, of the requirements and consequences of a summary judgment motion, we reverse the district court's grant of summary judgment in favor of all defendants other than Beltran and remand all claims that were dismissed at that stage, with one exception: we agree with the district court that Solis's § 1986 claim was untimely,[8] and therefore we affirm

---

[7]Not only did the Defendants fail to inform Solis of the proper procedures for responding to a summary judgment motion, they sought to *take advantage* of Solis's lack of understanding regarding those procedural requirements. Defendants' "Objections to Plaintiff's Opposition to Summary Judgment" focused almost exclusively on Solis's failure to meet the procedural and evidentiary requirements of countering a summary judgment motion—it complained that Solis's opposition was filed nine days late, did not contain a separate statement of undisputed facts, and was supported only by hearsay or documents that had not been properly disclosed.

[8]Section 1986 provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." 42 U.S.C. § 1986. Solis filed his federal complaint in February 2002, nearly three years after his alleged injuries took place.

the grant of summary judgment as to that claim. Otherwise, we decline to conduct harmless error analysis, as "harmless error review is inappropriate in most cases" of *Rand* violation, *id.* at 961, and this is not the "unusual case where the harmlessness of the failure to give the required notice may be established on the record or by judicial notice," *id. See also id.* at 960-61 (holding that harmlessness analysis may be appropriate where the record clearly shows that the plaintiff had received *Rand* notice in prior litigation or that he "has a complete understanding of Rule 56's requirements gained from some other source").[9]

## C.   Jury Trial

Solis also argues that the district court erred in holding a bench trial "by videotape depositions" instead of a jury trial to adjudicate his claims against Beltran, and that such error warrants reversal of its verdict in favor of that defendant. Whether a party is entitled to a jury trial is a question of law we review de novo. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "The unconstitutional denial of a jury trial must be reversed unless the error is harmless." *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1377 (9th Cir. 1997).

The Seventh Amendment guarantees the right to a trial by jury "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. Am. VII. Like other constitutional rights, the right to a jury trial in civil suits can be waived. *United States v. Moore*, 340 U.S. 616, 621 (1951); *Kulas v. Flores*, 255 F.3d 780, 784 (9th Cir. 2001); *see also* 8 Moore's Federal Practice § 38.52[1][b] (3d ed. 2006). "Because the right to a jury trial is a fundamental right

---

[9]That Solis met the requirements for countering summary judgment as to one defendant does not mean that he necessarily understood all that was required or what the consequences would be if he did not meet those requirements as to the others.

guaranteed to our citizenry by the Constitution," however, "courts should indulge every reasonable presumption against waiver." *Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir. 1981); *see also Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937).

**[7]** Federal Rule of Civil Procedure 38(b) requires a party wishing to assert the right of trial by jury to "demand a trial by jury . . . by (1) serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue, and (2) filing the demand as required by Rule 5(d)." The rule also specifies that "[s]uch demand may be indorsed upon a pleading of the party." Fed. R. Civ. P. 38(b).[10] A party's failure to serve and file the demand in the manner specified in Rule 38(b) constitutes a waiver of the right to a trial by jury. Fed. R. Civ. P. 38(d). Once a demand for jury trial has been properly made, however, it "may not be withdrawn without the consent of the parties." *Id.* "Rule 39(a) . . . sets forth the manner in which this consent may be granted." *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1304 n.20 (9th Cir. 1983). It requires consent to be made "by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record." Fed. R. Civ. P. 39(a)(1).[11]

---

[10]In the Central District of California, Local Rule 38-1 further provides that "[i]f the demand for jury trial is included in a pleading, it shall be set forth at the end thereof and be signed by the attorney for the party making the demand. The caption of such a pleading shall also contain the following: 'DEMAND FOR JURY TRIAL.' "

[11]Effective December 1, 2007, the language of Rules 38 and 39 were "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed. R. Civ. P. 38 & 39 advisory committee notes. Rule 38(b) now states that a party "may demand a jury trial by: (1) serving the other parties with a written demand—which may be included in a pleading—no later than 10 days after the last pleading directed to the issue is served; and (2) filing the demand in accordance with Rule 5(d)"; Rule

The district court stated two reasons for its decision to conduct a bench trial rather than a jury trial with respect to Solis's claim against Beltran. First, the district court found that Solis "did not file a jury demand." Second, the district court stated that Solis had waived his right to a trial by jury "due to the non-submission of required pretrial documents." We hold that both of the district court's reasons for denying Solis a jury trial were faulty: Solis clearly demanded a jury trial and never withdrew that demand, and the district court's imposition of a penalty of forfeiture of that right for failing to comply with a procedural pre-trial requirement was invalid. Because the district court's denial of a jury trial was not harmless error, we reverse the district court's verdict against Solis and remand for a new trial, this time by jury.

### 1. Solis demanded a trial by jury.

[8] The district court's finding that Solis "did not file a jury demand" was plainly in error. Solis included the words "DEMAND FOR JURY TRIAL" in the caption of his complaint as well as on the last page, which also contained the unambiguous statement, "Plaintiff hereby requests a trial by jury." Thus, it is clear that Solis complied with both the spirit and the letter of Federal Rule 38(b), as well as Local Rule 38-1, by unequivocally demanding a jury trial in both the caption and at the end of his pleading.

[9] Moreover, there can be no question that both the district court and the Defendants were aware of Solis's demand for a jury trial: the district court entered an "Order for Jury Trial,"

---

38(d) now states that a "proper demand may be withdrawn only if the parties consent"; and Rule 39(a)(1) now states that, once a demand is made, the trial "must be by jury unless . . . the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record." These changes to the rules' wording were "intended to be stylistic only," Fed. R. Civ. P. 38 & 39 advisory committee notes, and have no effect on the substance of our decision.

the case was docketed for jury trial, and the Defendants filed proposed jury instructions with the court. Indeed, the Defendants do not dispute on appeal that they were aware of Solis's request. Therefore, because Solis's jury demand was "sufficiently clear to alert" both the Defendants and the district court "that a jury trial [wa]s requested," *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1064 (9th Cir. 2005), the district court's finding that Solis "did not file a jury demand" was clearly erroneous.

### 2.  *Solis did not waive his right to a jury trial.*

The district court also found, as a separate ground for denying Solis a jury trial, that Solis had waived his right to a trial by jury "due to the non-submission of required pretrial documents"—specifically, Solis's failure to file proposed jury instructions and special verdict forms, despite the district court's warning in its Order for Jury Trial that failure to do so would "CONSTITUTE A WAIVER OF JURY TRIAL in all civil cases."

**[10]** When a party properly files a jury demand under the requirements of Rule 38(b), he has satisfied all that is required by the Rules to avoid waiver, and his jury demand "may not be withdrawn without the consent of the parties." Fed. R. Civ. P. 38(d); *see also Pradier*, 641 F.2d at 810. The district judge's waiver provision required Solis to satisfy additional procedural requirements beyond filing a jury demand— namely, the filing of jury instructions and special verdict forms—or to forfeit his jury trial right. This rule was clearly inconsistent with Rule 38(d)'s limitation of waiver to the failure to file a jury demand and consequently cannot be enforced. *See Pradier*, 641 F.2d at 810 ("[I]f Local Rule 22 is inconsistent with Fed. R. Civ. P. 38(b), it cannot be enforced."); *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 674 (9th Cir. 1975) (holding a local rule valid where its "requirements . . . do not conflict with any of the provisions of Rule 38").

**[11]** "The demand for a jury trial having been properly made under Fed. R. Civ. P. 38(b), the failure to fulfill an additional requirement of a local rule . . . cannot constitute a waiver of a trial by jury." *Pradier*, 641 F.2d at 811. Solis properly demanded a jury trial pursuant to the requirements of Rule 38(b). The district court's determination that his failure to file proposed jury instructions and special verdict forms constituted a waiver of his right to a trial by jury was therefore erroneous.

3. *Solis did not consent to the withdrawal of his jury demand.*

The Defendants argue, nevertheless, that by "participat[ing] in the [bench trial], inform[ing] the court of the witnesses he intended to call, and . . . not contest[ing] or object[ing] to the court's finding of a waiver of jury trial," Solis effectively consented to the bench trial. We find this argument without merit.

Rule 38(d) states unequivocally that a "demand for trial by jury . . . may not be withdrawn *without the consent of the parties*," Fed. R. Civ. P. 38(d) (emphasis added), and Rule 39(a) specifies that such consent must be made by written or oral stipulation. There is no dispute that Solis did not stipulate, either orally or in writing, to consent to a bench trial. Thus, it is clear that, under Federal Rules 38 and 39, Solis never withdrew his jury trial demand.

**[12]** Nevertheless, this court has held that "knowing participation in a bench trial without objection is sufficient to constitute a jury waiver," the literal requirements of Rule 39(a) notwithstanding. *White v. McGinnis*, 903 F.2d 699, 703 (9th Cir. 1990) (en banc). We have made clear, however, that this narrow exception to the formal requirements of Rules 38 and 39 applies only when the party claiming the jury trial right is attempting to act strategically—participating in the bench trial in the hopes of achieving a favorable outcome, then asserting lack of consent to the bench trial when the result turns out to

be unfavorable to him. *See Fuller v. City of Oakland*, 47 F.3d 1522, 1531 (9th Cir. 1995) (stating that a primary rationale behind *White* is the principle that "a party ought not to have two bites at the procedural apple"). In *White*, for example, although the district court set the case for a bench trial despite the appellant's timely jury trial demand, the appellant "never brought his prior jury demand to the district court's attention during the five and one-half month period between the bench trial notice and the trial," "sat through the entire bench trial and never once objected to the absence of a jury while his counsel vigorously argued his case to the judge," and did not "notify the court of its mistake before it entered judgment against him." *White*, 903 F.2d at 700. We held that the appellant's "vigorous participation in [the] bench trial, without so much as a mention of a jury" constituted a "knowledgeable relinquishment of the prior jury demand." *Id.* at 703. In avoiding an overly rigid application of Rule 39, we emphasized the equities involved, stressing that because the appellant "chose to argue his case fully before the district judge," it was "not unjust to hold him to that commitment." *Id.*

[13] Not every participation in a bench trial constitutes consent to the waiver of a jury trial, however. When a party participates in the bench trial ordered by the trial court while continuing to demand a jury trial, his "continuing objection" is "sufficient to preserve his right to appeal the denial of his request for a jury." *United States v. Nordbrock*, 941 F.2d 947, 950 (9th Cir. 1991); *see also California Mobile Home*, 107 F.3d at 1380 (noting that "no Court has expanded [*White*] to find a waiver of a right to a jury trial where a plaintiff actively contests the district court's decision to refuse the demand"); *White*, 903 F.2d at 703 (holding that "knowing participation in a bench trial *without objection*" constitutes a jury waiver) (emphasis added). This is because the party in such a case is not seeking "two bites at the procedural apple" like the appellant in *White*. *Fuller*, 47 F.3d at 1531. Rather, when a trial court denies a party a jury trial despite the party's continuing demand, the party has little choice but to accede to the trial

court's ruling and participate in the bench trial. *See Nord-brock*, 941 F.2d at 950 ("His assent to the [bench trial] was reasonable in light of the court's earlier ruling that implicitly denied the demand for a jury trial."). Reluctant participation in a bench trial does not waive one's Seventh Amendment right to a jury trial under *White*'s narrow exception to Rule 39(a).

**[14]** In this case, it is clear that Solis was not seeking "two bites at the procedural apple" by "participating" in the "Court Trial by videotape depositions." Once the district court found, erroneously, that Solis had waived his right to a jury trial, Solis had little option but to make his objection known and go forward with the bench trial as best he could. That he did so does not constitute "knowledgeable relinquishment of the prior jury demand." *White*, 903 F.2d at 703. Like the appellant in *Nordbrock*, Solis did bring his prior jury demand to the district court's attention during the "period between the bench trial notice and the trial." *White*, 903 F.2d at 700. He noted that demand in his second motion for counsel, filed after the district court found that he had waived his jury right.[12] Furthermore, in contrast to the appellant in *White*, Solis's "participation" in the bench trial was far from "vigorous," *see id.* at 703—the "trial" consisted solely of the court's review of videotaped deposition testimony, during which the parties were not even present. Therefore, indulging "every reasonable presumption against the waiver of the jury trial," *Nordbrock*, 941 F.2d at 950 (citing *Pradier*, 641 F.2d at 811), as we are bound to do, we hold that Solis did not, by participating in the dis-

---

[12]Although Solis included his statement that he had "demanded a jury trial" in his motion for counsel, rather than in a separate filing, we construe it as a "continuing demand" under *Nordbrock* pursuant to our "policy of liberal construction in favor of pro se litigants," *Rand*, 154 F.3d at 957; *see also Abassi v. INS*, 305 F.3d 1028, 1032 (9th Cir. 2002) ("[W]e have consistently held that procedural requirements should be more liberally construed for *pro se* litigants."). Moreover, it appears that at that time Solis believed that he was still entitled to and would receive a trial by jury.

trict court's bench trial by videotape depositions, consent to the withdrawal of his prior jury demand.

### 4. *The district court's erroneous denial of a jury trial was not harmless.*

**[15]** Having concluded that the district court erred in denying Solis a jury trial, we must determine whether that error was harmless. *See Fuller*, 47 F.3d at 1533. "The denial will be harmless only if 'no reasonable jury could have found for the losing party, and the trial court could have granted a directed verdict for the prevailing party.' " *Id.* (quoting *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir. 1985)).

We hold that the district court's denial of Solis's jury trial right was not harmless. Solis needed to prove the constitutional violation he asserted—namely, that Beltran acted with deliberate indifference in failing to protect him from attacks by other inmates, in violation of the Eighth Amendment, *see Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)—by only a preponderance of the evidence. *See Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006). Deliberate indifference occurs when "the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 841 (1990). Solis testified that he twice told Beltran that he was a gang drop-out and that he presented documentary evidence to Beltran establishing his status as an ex-Eme member, thereby putting Beltran—who himself testified that he had authority to change Solis's housing assignment—on notice that a transfer to the gang module could foreseeably result in Solis being attacked. Solis also testified that one of the inmates who assaulted him implicated Beltran directly in Solis's transfer to the gang unit, stating that "Beltran was the one that gave [him] up." Beltran, in turn, offered no explanation for Solis's transfer; his defense amounted to little more than a bald denial of any knowledge of or interaction with Solis. The district court itself found Beltran's presentation of evidence "less than

forthcoming," and determined that Solis's "version as to many of the events seem[ed] more credible than that of [Beltran's] witnesses."

**[16]** Given the relative credibility of the witnesses, a reasonable jury could have found that Solis, through his documents establishing his ex-gang member status as well as through his testimony that Beltran was aware of that status, proved by a preponderance of the evidence that Beltran acted with deliberate indifference in transferring him to the gang module. *Compare Frost*, 152 F.3d at 1131. Therefore, the district court's erroneous denial of a jury trial was not harmless and, consequently, we remand for retrial of Solis's case before a jury.[13]

### D.    *Request for appointment of counsel*

Finally, Solis argues that the district court abused its discretion in denying his request for the appointment of counsel. Title 28 U.S.C. § 1915(e)(1) permits the district court, in its discretion, to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see also Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004), *cert. denied sub nom. Gerber v. Agyeman*, 545 U.S. 1128 (2005). In this case, Solis twice requested the appointment of counsel. The district court rejected Solis's first request on the ground that no proof of service was attached. In denying Solis's second request, the district court stated only that "[t]he Court has reviewed the motion for appoint-

---

[13]Solis requests that we reverse the district court's finding in favor of Beltran and direct a verdict for him. Although we believe that a reasonable jury could have found for Solis on the evidence presented, we do not believe that his evidence was so strong that no reasonable jury could have found for Beltran, *see Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006) ("[J]udgment as a matter of law is appropriate only if no reasonable jury could find in favor of the non-moving party."), and therefore we decline to direct a verdict in Solis's favor.

ment of counsel, filed by plaintiff on April 28, 2005. The motion is denied."

**[17]** We note that a jury trial will occur in this case, and that Solis is incarcerated in a penal institution and is without legal training. In fact, his education ended at the eighth grade level. He is ill-suited to conduct a trial. We also note that there may well be merit to his claims. However, because the district court failed to articulate its reasons for denying Solis's request, we cannot determine on appellate review whether its denial constituted an abuse of discretion. *See United Nat'l Ins. Co. v. R & D Latex Corp.*, 141 F.3d 916, 919 (9th Cir. 1998) ("[M]eaningful appellate review for abuse of discretion is foreclosed when the district court fails to articulate its reasoning."); *United States v. 30.64 Acres of Land*, 795 F.2d 796, 804 (9th Cir. 1986) (holding that the district court "does not discharge [its] duty [under § 1915(e)(1)] if it makes no attempt to request the assistance of volunteer counsel or, where the record is not otherwise clear, explain its failure to do so"). Accordingly, we reverse the district court's order denying Solis's motion to appoint counsel and instruct the district court on remand to reconsider his request. If the district court should, after considering all the relevant factors, including those mentioned above, decide once again to deny Solis's motion for appointment of counsel, it must provide an adequate explanation of its reasons such that its decision may be reviewed by us on appeal.

## III. Conclusion

Because Solis was not provided notice of the requirements and consequences of summary judgement, as required by *Rand*, we reverse the district court's grant of summary judgment in favor of the defendants other than Beltran and remand all dismissed claims involving them (except for Solis's untimely § 1986 claim). We also reverse the district court's verdict in favor of Beltran and remand for a new trial before a jury. The district court erred in denying Solis a jury trial: he

properly demanded such a trial; his failure to submit specified pretrial documents cannot constitute a waiver of the jury right; and his "participation" in the bench trial did not amount to consent to a waiver of his prior jury demand. The failure to afford Solis a jury trial was not harmless error, as a reasonable jury could have found that Beltran violated Solis's constitutional rights. Finally, we reverse the district court's denial of Solis's request for appointment of counsel and remand on that issue as well. Because our reversal means that Beltran is no longer the "prevailing party," we vacate the bill of costs ordered against Solis. *See* Fed. R. Civ. P. 54(d).

The case is REVERSED and REMANDED, and the bill of costs is VACATED.