BEA, Circuit Judge,
concurring in part and dissenting in part, with whom KLEINFELD and CALLAHAN, Circuit Judges, join, and with whom IKUTA, Circuit Judge, joins as to all but Part III:
The last time this case was before us, the en banc court remanded to the district court to “determine in the first instance whether to impose an exhaustion requirement” on plaintiffs’ claims under the Alien Tort Statute (“ATS”).[1] Sarei v. Rio Tinto PLC, 550 F.3d 822, 832 (9th Cir.2008) (“Rio Tinto III ”). In determining whether such an exhaustion analysis was required, our Rio Tinto III plurality opinion (“Plurality opinion”) instructed the district court first to consider and balance two factors: (1) the strength of the nexus, if any, between the United States and the acts and omissions alleged in the complaint—the less nexus, the more reason for exhaustion, and (2) the gravity of the violations alleged, namely whether the claims implicated “matters of universal concern”—the more grave the violations, the less reason for exhaustion. Id. at 831.
Then, if this two-factor balancing test weighed in favor of imposing such an exhaustion requirement, the plurality opinion instructed the district court it should then perform the traditional two-part exhaustion analysis. That analysis would require the district court to consider: (1) whether the foreign plaintiffs had local remedies where the alleged torts occurred and had exhausted them, and, if not, (2) whether any exhaustion requirement is excused because local remedies are ineffective, unobtainable, unduly prolonged, inadequate, or otherwise futile to pursue. Were the district court to find the balance of “nexus” versus “matters of universal concern” weighed against such an exhaustion requirement for a given claim, then that claim could proceed without any consideration to exhaustion of local remedies.
In our remand order, we specifically instructed the district court to consider and weigh both factors in the prudential exhaustion framework—nexus and universal concern—regardless the strength or weakness of either factor. Even if the district court were to find that plaintiffs’ claims implicated matters of universal concern, “simply because universal jurisdiction might be available, does not mean that we should exercise it.” Id. Instead, the plurality opinion stated that “in ATS cases where the United States “nexus” is weak, courts should carefully consider the question of exhaustion, particularly but not exclusively—with respect to claims that do not involve matters of ‘universal concern.’ ” Id. (emphasis added). That meant that no matter how clear it was that a claim did involve matters of “universal concern,” the district court should still balance against that ground for dispensing with exhaustion an evaluation of what nexus, if any, existed between the violation claimed and our country.
Nonetheless, the district court—ostensibly purporting to apply the plurality opinion’s framework—summarily concluded *794 that no exhaustion analysis was required because plaintiffs’ allegations were of such a “heinous” nature that they stated “matters of universal concern.” Sarei v. Rio Tinto PLC, 650 F.Supp.2d 1004, 1031 (C.D.Cal.2009) (“Rio Tinto TV”). This “heinous” finding apparently applied indistinctly to each of four claims: genocide, war crimes, crimes against humanity (by blockade of medical supplies), and racial discrimination. Id. at 1032. The district court made no finding that any of such claims was more “heinous” than another, nor implicated “matters of universal concern” to a great extent. Likewise, the district court did not state whether any one, or any combination of less than four of the allegations, were sufficient to implicate “matters of universal concern.”
Then, without discussion of any facts which may have proved the presence or extent of a nexus—“weak,” “strong,” or otherwise—between such allegations of “heinous” acts and the U.S., the district court simply found that the “heinous” acts outweighed the “weak nexus” to the U.S. Id. at 1031. Here, the district court erred by skipping an essential step: it should have determined whether there was any nexus at all between the acts alleged and the United States. As discussed below, that should have been determinative for imposing the exhaustion requirement, resulting in dismissal of the complaint.
And now we have an additional problem with the district court’s action—a problem which ineluctably requires reversal and remand: this court’s present majority opinion knocks out two of the four allegations which the district court found all stated “matters of universal concern.”[2] Do the remaining two allegations (war crimes and genocide) outweigh the considerations of lack of—or even weakness of—nexus? It is not for us to say, under the mandate of the earlier plurality opinion. It is for the district court to determine. Even if we find no error in the district court’s original determination that consideration of the allegations outweighed the consideration of nexus, we now have a different balance to be weighed: fewer valid allegations than before, but the same nexus, or lack there-cf. A new balance must be struck, and it must be struck by the district court.
I. Failure properly to consider “nexus”
The district court defined its terms so as to predetermine the outcome of the prudential exhaustion requirement it was ordered to carry out. The district court defined the “spectrum” on which to measure the nexus between the claims and the United States as running from “weakest” to “strongest,” instead of running from “no nexus” to “strong nexus.” It assumed there was at least some nexus.
But there was no such nexus. This case involves a so-called “Foreign-cubed suit”[3]: a foreign plaintiff suing a foreign defendant for alleged torts which occurred entirely on foreign soil. The only connection the plaintiffs can identify between their causes of action and the United States is that Rio Tinto, a British corporation, does business in the U.S. These business activities may provide a sufficient basis for the *795 exercise of personal jurisdiction by a federal court over Rio Tinto. See, e.g., Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878); Int’l Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). But that was not the issue to be determined on remand; “nexus” was. By “nexus” was meant whether Rio Tinto’s alleged acts of genocide and war crimes in Papua-New Guinea—approximately 4,300 miles southwest of Hawaii, our state closest to Papua-New Guinea—had any connection with the United States. Rio Tinto’s only alleged connections with the U.S. were its operations and assets in this country— which operations and assets are not even claimed to be in any way related to the acts of genocide and war crimes alleged by the plaintiffs as culpable conduct of Rio Tinto. Thus, there simply is no nexus between the acts complained of in this action and the United States. In fact, in this era of globalization, it is indeed difficult to imagine a suit where the United States would have less of an interest or connection to the facts underlying the complaint.
Of course, by self-defining the low range of the nexus spectrum as “weak nexus,” the district court was able to mischaracterize the nexus in this case as “weak” instead of inexistent. To support this implausible factual finding, the district court relied on the plurality opinion’s unexplained statement that, based on appearances—not examined evidence—plaintiffs’ allegations “lack[ed] a significant United States ‘nexus.’ ” Rio Tinto III, 550 F.3d at 831. But a district court’s unexplained reliance on tentative, unreasoned appellate dicta cannot take the place of reasoned analysis based on proof, particularly where every fact and inference to be drawn from the record suggests that there is no nexus at all between the plaintiffs’ claims and the United States. See United States v. Hinkson, 585 F.3d 1247, 1251 (9th Cir.2009) (en banc), cert. denied, — U.S. —, 131 S.Ct. 2096, 179 L.Ed.2d 890 (2011).
From that factual error, let us go to the legal error. Having implausibly found that the United States has a “weak” nexus to the suit when in fact no such nexus exists, the district court misapplied the balancing test set forth in the remand order. The plurality opinion stated that “where the United States “nexus” is weak, courts should carefully consider the question of exhaustion, particularly—hut not exclusively—with respect to claims that do not involve matters of ‘universal concern.’ ” Rio Tinto III, 550 F.3d at 831 (emphasis added). In other words, the district court should be especially solicitous of imposing an exhaustion requirement when the nexus is weak and the claims do not implicate matters of universal concern. But it should weigh the nexus issue even where the matters are of “universal concern.”
The district court’s opinion provides no basis for us to review that any such balancing took place. In fact, in her 31-page opinion, the district court dedicated only one sentence to her purported balancing of the nexus and universal concern factors. This one sentence consists of a conclusory assertion that the “weak nexus” between the plaintiffs’ claims and the United States “is outweighed by the ‘heinous’ nature of the allegations on which the claims are based.” Rio Tinto IV, 650 F.Supp.2d at 1031.
Nor did the district court try to reconcile its new rule exempting allegations of “heinous” conduct of universal concern from the exhaustion requirement with the remand order’s statement that mere universal jurisdiction for a claim is not itself a sufficient condition for exempting exhaustion. See Rio Tinto III, 550 F.3d at 831. Perhaps worst of all, the only authority the district court cited for her conclusion that *796 characterizing acts as “heinous” suffices to outweigh the weakness or inexistence of any nexus between the “heinous” acts and the United States is Judge Reinhardt’s dissent in Rio Tinto III—-which dissent opposed imposition of any exhaustion requirement, prudential, mandatory, or in between, for any claims brought under the ATS and which dissent performed no balancing or weighing of “nexus” versus “matters of universal concern.” Much as we may respect and value a dissent, it is not Ninth Circuit precedential authority.
Under the abuse of discretion standard, we must defer to reasonable applications of multi-factor balancing tests. But where the district court fails to perform the prescribed balancing test, detail how it weighed the relevant factors, or otherwise explain its conclusion, such deference is inapplicable. See Solis v. Cnty. of Los Angeles, 514 F.3d 946, 958 (9th Cir.2008) (reversing because the district court failed to consider a relevant factor or provide an adequate explanation for its decision, rendering meaningful appellate review impossible). To uphold a district court’s ruling which directly flouts our instructions is to encourage instability in our law.
II. Majority opinion requires a remand
As noted, the majority opinion determines that allegations of “crimes against humanity” (per blockade) and of “racial discrimination” do not constitute claims sufficiently specific, universal, and obligatory so as to violate jus cogens (customary international law). Therefore, such allegations do not implicate “matters of universal concern.”
Given this result, the district court’s failure to articulate the ordered balancing between “nexus” and “matters of universal concern” makes now mandatory a remand for a new determination of prudential exhaustion. We cannot tell from the district court’s opinion if any of the allegations of the complaint found valid by the majority opinion were, by themselves or in conjunction, sufficiently “heinous” as to outweigh the lack of nexus, or whether it was the other allegations in some combination, or in total which outweighed the lack of nexus. Perhaps now, with the allegations of “crimes against humanity” and “racial discrimination” knocked out, the remaining allegations will not outweigh the lack of nexus. Either way, a remand is in order.
III. Mandatory exhaustion required
Because I find that our mandate to exercise prudential exhaustion was not carried out, I do not want to be understood to have abandoned the view that exhaustion of local remedies is mandatorily required by “the law of nations.” It is not solely a matter of judicial prudence to require such exhaustion. The incorporation of substantive international law (the law of nations) into the ATS necessarily incorporates not just the traditional causes of action recognized by the law of nations, but also the traditional limitations placed on those rights by customary international law. One of those well-established limitations is exhaustion of local remedies. Rio Tinto III, 550 F.3d at 833 (Bea, J., concurring); see also Jose E. Alvarez, ljih Annual Herbert Rubin and Justice Rose Luttan Rubin International Law Symposium: A Bit on Custom, 42 N.Y.U. J. Int’l L. & Pol. 17, 72 (2009) (recognizing exhaustion of local remedies as one of the “fundamental rules of customary international law”).
Mandatory exhaustion analysis is not simply a historical remnant or an administrative or procedural rule. As recognized by legal scholars and our courts, the exhaustion requirement plays a critical role in American foreign relations by preventing our judiciary from interjecting itself *797 into ongoing international disputes or interfering with domestic matters of sovereign nations.[4] Because a mandatory exhaustion requirement is supported by the Supreme Court’s holding and language in Sosa[5] by the language and purpose of the ATS, and by customary international law, I continue to believe that there should be mandatory exhaustion analysis for all claims raised under the ATS in federal court.
IY. Conclusion
I believe the district court erred in applying the rules of prudential exhaustion as ordered by us in Rio Tinto IITs plurality opinion; but even if I am wrong on that, our majority opinion now requires a remand and a new application of prudential exhaustion. I also believe plaintiffs’ claims are barred by the mandatory exhaustion provisions of the law of nations. For both these reasons, I respectfully dissent.

. “Exhaustion Requirement” meant plaintiffs would be first required to sue defendant in the courts of Papua-New Guinea, where they alleged the defendant did what they claim hurt them. Only after pursuing their legal remedies there—or proving such pursuit was futile—could plaintiffs attempt to use U.S. courts.

. The majority opinion holds that the international law norms identified by the district court against racial discrimination and crimes against humanity arising out of the blockade of medical supplies are not sufficiently "specific, universal or obligatoiy” under Sosa v. Alvarez-Machain, 542 U.S. 692, 732, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004). I agree with the majority opinion on both of these issues.

. Morrison v. National Australia Bank Ltd.., —U.S.—, 130 S.Ct. 2869, 2894 n. 11, 177 L.Ed.2d 535 (Stevens, J., concurring).

. Judge Kleinfeld's fine dissent explains that the ATS was passed precisely for this reason: to prevent international conflict between the United States and other sovereign nations by providing foreign plaintiffs (namely, Ministers and ambassadors) with a cause of action in federal court for torts committed against them on U.S. soil, at a time—shortly after our Revolutionary War—when most states did not permit foreigners to sue Americans in tort.

. The Court noted that, in determining the availability of relief in federal courts for violations of customaiy international law, it would "certainly consider” whether "the claimant must have exhausted any remedies available in the domestic legal system, and perhaps in other forums such as international claims tribunals.” Sosa, 542 U.S. at 733 n. 21, 124 S.Ct. 2739.